F. A. ONTJES et al., Plaintiffs, Appellees, OLE HOLTA et al., Intervenors, Appellees, v. HANFORD MCNIDER et al., Executors, Defendants, Appellants.

No. 43778.

116

September 28, 1937.

Davis, McLaughlin & Hise and Smith & Feeney, for appellants.

F. A. Ontjes, D. M. Kelleher, W. G. Henke, and Ben S. Hunter, for appellees.

Donegan, J.—This case involves a claim against the estate

of C. H. McNider, deceased, and is brought in the names of F. A. Ontjes and others, as stockholders in the Northwestern States Portland Cement Company, a corporation, in behalf of the corporation and in behalf of themselves and other stockholders similarly situated, against Hanford McNider and May H. McNider, executors of the estate of C. H. McNider, deceased.

C. H. McNider died testate on October 30, 1928, and Hanford McNider, his son, and May H. McNider, his widow, were thereafter appointed executors of his will and duly qualified. The original claim in this action was filed August 6, 1931. Many and voluminous pleadings have been filed in this action by both plaintiffs and defendants, but, for the purposes of this appeal, it is not necessary to consider these pleadings in detail.

Among other defenses, the defendants pleaded that the plaintiffs' claim was barred, because it was not filed within twelve months from the giving of notice of their appointment by the executors, as provided by section 11972 of the 1927 Code, which is as follows:

"11972. * * * All claims of the fourth of the above classes, not filed and allowed, or if filed and notice thereof, as hereinbefore provided, is not served within twelve months from the giving of the notice aforesaid, will be barred, except as to actions against decedent pending in the district or supreme court at the time of his death, or unless peculiar circumstances entitle the claimant to equitable relief."

The pleadings of the plaintiffs, however, alleged matters which they contend constituted peculiar circumstances entitling them to relief from the bar of the statute. On March 9, 1936, on application of the defendants, an order was entered by the trial court directing that the issue as to the existence of peculiar circumstances claimed entitling them to equitable relief be considered and determined before proceeding to the trial of the claim itself upon its merits. Trial was thereupon had by the court for the purpose of determining this issue, and, at the conclusion of such trial, the trial court, on the 11th day of June, 1936, entered a ruling in which it found—that the claim involved was a claim of the fourth class; that it was not filed within twelve months from the giving of notice of their appointment by the executors of the estate; that claimants had proved, by the preponderance of the evidence, peculiar circumstances entitling them to equi-

table relief; that said claim is not barred by the failure to file it within twelve months from the giving of notice of their appointment by the executors; and it was ordered that said claim was entitled to come on for hearing in due course and be heard on its merits. From such ruling and order of the trial court the executors of the estate of C. H. McNider, deceased, have appealed to this court. For convenience the claimants will hereafter be referred to in this opinion as plaintiffs or appellees and the executors will be referred to as defendants or appellants.

■■■ Prior to its submission the appellees filed a motion to dismiss the appeal, on the ground that the order from which the appeal was attempted is not an appealable order. This motion was ordered submitted with the case and, as it goes to our jurisdiction to consider or decide the questions presented in the appeal, it must receive our attention before proceeding further.

■■■ Under our Code system the right of appeal to the supreme court is purely statutory. Unless authorized by statute no appeal can be taken to this court from judgments or orders of inferior courts, and the statutes controlling appeals are those that were in effect at the time the judgment or order appealed from was rendered. The ruling and order here appealed from were rendered on June 11, 1936. The statutes controlling this appeal are, therefore, found in the Code of 1935. The only statutes on which appellants claim a right to base their appeal in this case are section 12822, and subdivision 4 of section 12823, of the Code of 1935, which are as follows:

"12822. * * * The supreme court has appellate jurisdiction over all judgments and decisions of all courts of record, except as otherwise provided by law."

"12823. * * * An appeal may also be taken to the supreme court from: * * *

"4. An intermediate order involving the merits or materially affecting the final decision."

I. Appellants first contend that the order appealed from is a final order and judgment of the court, and that, as such, an appeal therefrom is authorized by section 12822.

■■■ Appellants' first argument in support of this contention is based upon the nature of the proceeding in which the order was entered. While the establishment of a claim in a pro-

bate proceeding is a law action, the issue as to the existence of peculiar circumstances entitling a claimant to equitable relief is tried by the court as an equitable proceeding, and is determined by the application of equitable principles. Lamm v. Sooy, 79 Iowa 593, 44 N. W. 893; Peterson v. Johnson, 205 Iowa 16, 212 N. W. 138. Section 4, Article V, of the Constitution of Iowa provides: ''The Supreme Court shall have appellate jurisdiction only in cases in chancery, and shall constitute a Court for the correction of errors at law, * * *.'' Appeals to this court in equitable cases are, therefore, tried *de novo,* while, in appeals in law actions, this court can only act as a court for the correction of such errors as are specifically pointed out. Appellants contend that, in the instant case, the order involved was in an equitable proceeding; that an appeal from that order must be tried in this court *de novo,* whereas, an appeal from a judgment reached on the trial of the claim on its merits would be in a law action and could only be reviewed in this court on errors specifically pointed out; that the order entered by the court on the equitable issue was final as to such issue; and that an appeal from that order could not be considered on an appeal from the final judgment entered on the trial of the claim upon its merits.

Prior to the adoption of our Constitution and the enactment of statutes authorizing appeals to this court, there were many differences between obtaining a review in an appellate court in an action in equity, and a correction of errors in an action at law. Under the old English system, courts of law and courts of equity were entirely distinct, and a review in an equity case was by a different tribunal than that in which a review could be had in an action at law. Now the same tribunal, the supreme court, entertains appeals from and reviews both actions in equity and those at law. The procedure followed in removing actions from the trial court to an appellate court was likewise different, actions at law being removed by a writ of error, and actions in equity by appeal. Writs of error are now dispensed with and the same method, notice of appeal, is pursued in transferring cases to the supreme court in both actions in equity and those at law. The case of Sherwood v. Sherwood, 44 Iowa 192, was an action in equity for divorce. The plaintiff appealed and assigned errors in this court. The defendant insisted that, because the plaintiff assigned errors in this court, the case must be tried on such errors, and this court said:

"* * * but the erroneous act of the party cannot control the jurisdiction of the court. The question for us to decide is, how is the cause triable here? not, what course do parties pursue to bring it to trial. As a matter of fact it has been, and still is the habit of many attorneys who have extensive practice in this court to assign errors in equity cases, which no one claims are triable upon errors.

"VI. It is also urged that if the cause is triable *de novo* in this court, it ought to be dismissed for it is brought here improperly upon errors. Three cases found in 1 Greene are cited to support this proposition. It is a sufficient answer to this position to remark that the statutes under which those decisions were made in no respect resemble those in force to-day. Then law actions were removed to the Supreme Court by writ of error, chancery cases by appeal. Rev. St., 1843, p. 115, §§67, 68; pp. 145-6, §§6, 7. Now writs of error are dispensed with and one course is pursued in bringing up all cases."

Although an appeal in an equitable action must be tried *de novo* in this court, while an appeal in a law action can be tried here only on errors specifically pointed out, our statutes and the rules of this court, in regard to the preparation of abstracts, briefs and arguments, are equally applicable, as to most of their provisions, to appeals in equitable actions and those at law. The tendency under our Code procedure is to avoid non-essential technicalities so far as is reasonably possible, and to decide cases upon their merits. Although appellants have argued this phase of the case very extensively, and have set out authorities showing the difference between a review of an equitable action by trial *de novo*, and a review of an action at law on errors specifically alleged, they have not called our attention to and we have been unable to find any case holding that, because an action at law involves equitable issues, the finding of the court upon the equitable issues is such a final judgment or order as cannot be presented upon an appeal from the final judgment in the case. As far as the practical aspects of a review in this court are concerned, we see no insuperable difficulty in reviewing the equitable issues by trial *de novo*, while considering the alleged errors asked to be corrected in the law action, in an appeal from the final judgment on the merits. In fact, this seems to be precisely what this court has frequently done in

appeals involving claims in probate. See Simpson v. Burnham, 209 Iowa 1108, 229 N. W. 679; Anthony v. Wagner, 216 Iowa 571, 246 N. W. 748; In re Estate of Turner, 219 Iowa 30, 257 N. W. 443.

Appellants, however, contend that the appeal in the instant case is controlled by our holding in McMurray v. Day, 70 Iowa 671, 673, 28 N. W. 476, 477, which, they say, was followed and approved by Benson v. Chas. Weitz's Sons et al., 211 Iowa 489, 231 N. W. 431. In the McMurray case the action was brought in equity to set aside a deed to real estate, which plaintiffs alleged had been obtained from them by fraud. There was also a request for an accounting of the rents of the real estate. The trial court found that the defendant had obtained the deed by fraud, set the deed aside, established the ownership of the land in plaintiffs, and ordered that the defendant reconvey the land to the plaintiffs, upon the payment to him, with interest, of the sum paid by him, and the value of substantial improvements made by him, less rents and profits and the value of certain timber taken from the land by him. The case was referred to a referee to take an account and determine the amount of these items. This accounting was not completed until several months after the original decree had been entered and, after the report of the referee was filed and approved by supplemental decree, an appeal was taken by the defendant. This appeal was not taken until more than six months after the entry of the original decree setting aside the deed and establishing the rights of the parties. The appellees contended that the original decree was a final judgment in the case and could not be reviewed upon an appeal from the decree approving the report of the referee, and this court sustained the appellees' contention. In so holding, we said:

"But the former adjudication was in no way dependent upon the state of the account, or upon the plaintiffs' payment. Nothing could be developed in the subsequent proceeding which could affect its correctness, or require it to be changed. It was final, we think, if a decree ever can be final, where something more is to be ascertained and done in order to give the party in whose favor it was rendered a right to its enjoyment."

Appellants argue that, as nothing can be developed in the subsequent proceedings in the trial of the instant case that can

affect the correctness of the order entered or require it to be changed, the order here involved is a final order, under the holding in the McMurray case. A cursory examination of the opinion in that case shows that the original decree was a decision on the merits. The principal question involved was whether or not the plaintiffs were entitled to the land which they alleged the defendant had obtained from them by fraud. The original decree not only decided this question in favor of the plaintiffs, but it also decided the equities between the parties growing out of the facts that the defendant had paid a consideration for the land, had made improvements on it, had occupied or obtained rentals therefor, and had taken timber therefrom. The only matter left undecided was the amount, or value of these different items, and, as to these matters, a reference was ordered. Clearly, the merits of the case were fully decided in the original decree. The accounting was merely incidental to such decree, could in no manner change the rights of the parties, and could only furnish details as to the amounts and values of improvements, rents, etc. In the instant case, however, the real issue involved is the existence of an indebtedness owed by the estate of the decedent to the claimants, or the existence of a relation by the decedent, C. H. McNider, to the claimants, out of which an indebtedness and duty to account would arise. The order entered in no way determines the merits of that claim. While nothing can be developed in the subsequent proceeding which can affect the correctness of the order or require it to be changed, this order decides only that the claim is not barred because not filed within the twelve-month period, and that it can be heard on its merits. Whether or not the claim, or any part thereof, will be allowed, will not be affected in any way by the order here involved, but will depend upon the evidence and proceedings in the trial of the case upon its merits.

In the case of Benson v. Charles Weitz' Sons et al., 211 Iowa 489, 494, 231 N. W. 431, 433, the plaintiff's petition charged the defendants, as trustees of a fund in which the plaintiff claimed to have the right to share, and asked for an accounting. The defendants set up several defenses, among which was a denial of the trusteeship and a denial that defendants sustained any relation to the plaintiff which imposed upon them a duty of accounting. Upon this state of the pleadings, the trial court appointed a referee and ordered him to proceed to take an ac-

counting from the defendants. The defendants moved to set aside such order as premature, and asked that the issue upon their plea in bar of an accounting be first determined. From the action of the court ordering an accounting, appointing a referee therefor, and refusing to first consider the issue raised by the defendants' plea in bar of an accounting, the defendants appealed. This court, after pointing out the old and well-established rule of equity in accounting cases, as stated in 1 Corpus Juris, 610, that, "In an action of account there are two judgments: (1) Upon the preliminary trial of the right to the accounting, that defendant do account (quod computet) ; and (2) final judgment upon the report of the auditors for the balance found due," held that, before a referee could be appointed and an accounting had, the trial court should first have determined the issue raised by defendants' plea in bar of an accounting and should have determined whether or not the plaintiff was entitled to an accounting by the defendants, and said:

"In the case at bar, the effect of the court's peremptory order of reference was to deprive the defendants wholly of an opportunity to first try the issue of plaintiff's right to an accounting. Such peremptory order assumed that the plaintiff had such right, as a matter of course. This was an erroneous view. It was the duty of the court to hear and determine that issue before ordering a reference for an accounting. *In this case, this issue presents the gist of the controversy between the parties.*" (Italics are ours.)

The above quotation from the opinion clearly shows that, in an equity action for an accounting, the gist of the action is the plaintiff's right to have an accounting. The existence of this right in the plaintiff goes to the very merits of the action, and must be determined before any further proceeding can be had in the case. The plaintiff questioned the appealability of the order entered, and, in that connection, we said:

"It is urged by the appellees that the order complained of is not appealable. The defendants were entitled to an adjudication of the issue. Under the authorities, such adjudication would be final on that issue, though it might also be regarded as interlocutory, in case the issue was determined against the defendants. If determined in favor of the defendants, it would

become final in every sense. By the order complained of, the court prevented any adjudication of this issue from which an appeal could have been taken. An adjudication sustaining the plea in bar would clearly be appealable. It would seem to follow necessarily that the contrary adjudication would be likewise appealable. We so held in an analogous case, McMurray v. Day, 70 Iowa 671, 28 N. W. 476. We think that the order was appealable as one preventing a judgment from which either party could have appealed."

Appellants have set out all of the above quotation except the first two sentences and the last sentence thereof, and they seem to place great reliance on the portions of the opinion thus quoted by them. There is nothing in the opinion which indicates on what grounds the appellees claimed that the order complained of was not appealable. The ground, however, upon which this court held that it was an appealable order is quite apparent from the portions of the opinion which we have quoted. Therein this court said:

"* * * the effect of the court's peremptory order of reference was to deprive the defendants wholly of an opportunity to first try the issue of plaintiff's right to an accounting. * * * In this case, this issue presents the gist of the controversy between the parties. * * * The defendants were entitled to an adjudication of the issue. * * * By the order complained of, the court prevented any adjudication of this issue from which an appeal could have been taken. * * * We think that the order was appealable as one preventing a judgment from which either party could have appealed."

It is apparent, therefore, that the order appealed from was not held to be appealable because it was a final order, but because it prevented a judgment from which an appeal could have been taken under subdivision 1 of section 12823, which authorizes an appeal, "when such order, in effect, determines the action and prevents a judgment from which an appeal might be taken." The judgment which it prevented was a judgment on the question of the plaintiff's right to an accounting.

The plaintiffs place particular stress upon that part of the opinion which says:

"An adjudication sustaining the plea in bar would clearly

be appealable. It would seem to follow necessarily that the contrary adjudication would be likewise appealable. We so held in an analogous case, McMurray v. Day, 70 Iowa 671, 28 N. W. 476.''

We are unable to see how the holding in McMurray v. Day can be said to support the proposition that, because an order, which finds that a plaintiff is not entitled to an accounting, is appealable, an order, which holds a plaintiff is entitled to an accounting, is likewise appealable. It is true that, in the McMurray case, an accounting was involved, but it is not true that the issue as to plaintiff's right to an accounting was the gist of the action. As we have already seen, the McMurray case was an action to set aside a deed which had been fraudulently obtained. The decree entered found that the deed had been obtained by fraud, that the property belonged to the plaintiffs, that the plaintiffs were entitled to rents received for the land and the value of timber taken therefrom, and that the defendant was entitled to a return of the money paid, and the value of improvements made on the land, and directed a referee to take an accounting. That decree was held to be a final order because it determined the ownership of the land and the equities growing out of the situation, and the accounting was merely incidental to the matters thus determined. Because, under the particular facts of the McMurray case, the original decree was held to be a final decree from which an appeal could have been taken, we do not think it necessarily follows that every decree or order which determines that a plaintiff has a right to an accounting is a final judgment or order from which the defendant has a right of appeal. McMurray v. Day is the only authority cited in the Benson case for holding that, because an order denying a plaintiff the right to an accounting would be final and appealable, therefore, an order holding that plaintiff had a right to an accounting would likewise be final and appealable. As against the universality of the application of such a rule, even in accounting cases, it is sufficient to refer to the rule set out in 2 American Jurisprudence, p. 865, sec. 26, wherein it is said:

''After some confusion among the decisions, the rule has come to be that if the court makes a decree fixing the rights and liabilities of the parties, and thereupon refers the case to a master for a ministerial purpose only, and no further proceedings in

court are contemplated, the decree is final for purposes of appeal or error, but if it refers the case to him for a judicial purpose, and a further decree is to be entered, the decree is not final. It makes no difference that such decree dismisses the cross complaint of the defendant.''

We must not be considered as holding that the decision in the Benson case was wrong as to the questions really involved in that case, or that the judgment, which, it was there held, was prevented by the order complained of, would not have been a final judgment in that case. What we do hold is that, because the original decree in the McMurray case was held to be final, this does not furnish the basis for a general rule, even in accounting cases, that an order finding the plaintiff entitled to an accounting is always a final judgment or order. Nor do we think that the writer of the opinion in the Benson case intended to announce any such rule for general application to all cases. The writer of the opinion in the Benson case was also the writer of the opinion in Ellis v. Bruce, 215 Iowa 308, 319, 245 N. W. 320, 325, wherein he said:

''We have had occasion to hold in one or two cases that an order sustaining a motion [to strike] of the kind r ñw under our consideration, is appealable. Stanley v. City of Davenport, 54 Iowa 463, 2 N. W. 1064, 6 N. W. 706, 37 Am. Rep. 216; Waters v. Sioux City, 193 Iowa 72, 186 N. W. 451. It does not necessarily follow that a converse ruling would likewise be appealable. We have often held that an order sustaining a motion to strike a pleading in whole or in part is, or may be, appealable; whereas an order overruling such a motion is not necessarily appealable. The reasons are obvious, and we need not discuss them.''

Both principle and authority negative the existence of any general rule that, because an order against one side, in a given action, would be final and appealable, therefore, an opposite ruling must likewise be final and appealable. An order entered in ruling on a motion or application of the defendant in a given case might be such as to prevent the plaintiff from proceeding with his action, and from having a trial on the merits. Such order clearly would be final and, therefore, appealable. But if, instead of being against the plaintiff, the order was against the

defendant, it would not prevent him from setting up any and all defenses he might have or from having a trial and decision on the merits. We are unable to see how such an order could be said to be final.

In Barber v. Shattuck, 207 Iowa 842, 842, 223 N. W. 864, 865, the trial court had set aside a default judgment against the defendant, and the plaintiff appealed. In sustaining the action of the trial court, we held the order to be not appealable and said:

"Does he have the right so to do? [appeal] We are constrained to answer in the negative.

"In Odell v. Coquolette, 103 Iowa 435, 436, 72 N. W. 670, 671, we said:

" ' * * * the default had been entered, but, notwithstanding, the order [setting aside the default] did not prevent a judgment from which an appeal might be taken. From that judgment plaintiff might not desire to appeal. If he did, he could, with a proper record, have reviewed the ruling on the motion to set aside the default. The question we consider is jurisdictional, and we are required to take notice of it, whether presented by the parties or not.' "

In Baker v. American Railway Express Company, 207 Iowa 1350, 1351, 224 N. W. 513, 514, we likewise had an appeal from an order setting aside a default and, in sustaining the trial court, we said:

"Of course, if the motion to set aside default is overruled, then the case is finally disposed of, and a different rule would apply."

In In re Receivership Bank of Hamburg, 203 Iowa 1399, 1402, 214 N. W. 561, 562, to which we shall refer more at length hereafter, the defendant-receiver appealed from an order holding a claim not barred because not filed within time fixed by order of court, and we said:

"Had the appeal been by the claimant from an order denying him a right to file his claim, resulting in a denial of the claim without a hearing on the merits, a different question would be presented."

We hold that the order from which the appeal in this case

was attempted was not a final judgment or order from which an appeal is authorized under section 12822.

II. Appellants contend, however, that, even though the order appealed from be not a final order and judgment, it is appealable under the provisions of subdivision 4 of section 12823, because it is "an intermediate order involving the merits or materially affecting the final decision." Appellants rely upon and quote extensively from Dorman v. Credit Reference & Reporting Co., 213 Iowa 1016, 1019, 241 N. W. 436, 438. They also claim support for their position in Ontjes v. McNider, 218 Iowa 1356, 256 N. W. 277; Manley v. Paysen, 215 Iowa 146, 244 N. W. 863; and Ellis v. Bruce, 215 Iowa 308, 245 N. W. 320; which followed and reaffirmed the ruling in the Dorman case. An analysis of these cases will show that the orders therein considered were held to be appealable because they clearly came within the provisions of subdivision 4 of section 12823; but we do not think that the holdings in these cases support the appellants' contention that the order appealed from in the instant case, likewise involves the merits or materially affects the final decision.

In Dorman v. Credit Reference & Reporting Co., supra, plaintiff was engaged in selling school equipment in Des Moines and adjacent territory and sued for damages alleged to have been sustained by reason of the publication by defendants of an alleged false report in a credit reference and reporting book. Plaintiff alleged special damages to his business and earnings, to his reputation, good name, credit and standing, and that, because of such publication, he had been refused credit by several merchants. Defendants asked for more specific statement as to the names of customers whom plaintiff had lost, in what particulars his earnings and business had been injured, and the names of merchants by whom credit had been denied. This motion was overruled and the defendants appealed. In an exhaustive opinion written by Mr. Justice Grimm, several former pronouncements of this court were reviewed, some of them explained, and some overruled. This court held the order there involved to be appealable under subdivision 4 of section 12823, because it involved the merits or affected the final decision, and said:

"It is not always easy to determine whether an intermediate order necessarily involves the merits or materially affects the final decision. The test by which the right of appeal from an

intermediate order is to be determined is: Will the party aggrieved thereby be deprived of some right which cannot be protected by an appeal from the final judgment? [Citing cases.] If an intermediate ruling or order affecting the merits inheres in the final judgment and may be reviewed upon appeal therefrom, direct appeal from such ruling or order is not permissible. Crum v. Emmett [191 Iowa 797, 183 N. W. 383], supra; McClurg & Walker v. McEvoy [188 Iowa 752, 176 N. W. 673], supra. * * *

"Frivolous appeals should be avoided. It is not the policy of the law to permit either party to a controversy to prolong litigation or delay the course of justice by prosecuting an appeal from every interlocutory ruling or order of the trial court. [Citing cases.] If the ruling or order complained of is inherent in the final judgment and may be presented on appeal therefrom, this is the procedure that must be followed. In re Receivership of Bank of Hamburg, 203 Iowa 1399, 214 N. W. 561; McClurg & Walker v. McEvoy, 188 Iowa 752, 176 N. W. 673, and many of the cases cited. * * *

"Coming now directly to the question presented on this appeal: Special damages are asked. In part at least, the right thereto is based upon the refusal of certain concerns to extend credit to appellee, and, in addition, it is alleged that appellee has suffered great loss of earnings in his business. The motion asks that appellee state the names of those who have denied him credit, of the creditors lost, and of the ultimate facts upon which he predicates a request for judgment on account of loss and injury to his earnings and business. As to these matters, the motion goes directly to the cause of the action, and involves the merits of the controversy. There is a sense, of course, in which the information sought is evidential in character, but it is essential to a proper statement of his cause of action for special damages. Appellant is entitled to know the ultimate facts upon which appellee relies, in order that he may be prepared for trial. The business of appellee is not even confined to the city of Des Moines, but includes adjacent territory. If he has suffered loss of business and earnings, as well as customers, and injury to his credit, it is quite necessary that appellants be put in possession of such facts as will enable them to prepare for trial. Likewise, the names of those who have denied him credit on account of the alleged liability in the city of Des Moines should be set out

in the pleading. All of these matters are essential to a proper statement of the cause of action and the speedy administration of justice.''

It is apparent that the holding in the Dorman case was based on the ground that the defendants' motion called for information, which the defendants were entitled to have in preparing for trial of the case upon its merits; that, if required to proceed to trial without such information, they would be at a disadvantage because of uncertainty as to what evidence they would have to meet; and that such information went to the merits of the case and, if not presented in the trial, would affect the final decision. It is obvious, therefore, that the order entered by the trial court in the Dorman case, by preventing the defendants from obtaining information to which they were entitled, clearly involved the merits of the controversy or affected the final decision.

In the case of Ontjes v. McNider, 218 Iowa 1356, 1362, 1363, 256 N. W. 277, 280, there was an appeal from an intermediate order involving the pleadings in the case now at bar. The plaintiffs had filed prior pleadings in which they had joined other defendants, along with the executors of the estate of C. H. McNider, deceased, including the widow and son of the deceased, in their individual capacities. The order appealed from overruled the defendants' motion to strike and to dismiss as to the defendants other than the estate, and permitted the plaintiffs to join other defendants along with the estate. The plaintiffs moved to dismiss the appeal on the ground that the order entered was not appealable. This court held that:

''The only issue triable in this proceeding is triable in the probate court upon the original claim as made by the claimant against the estate of C. H. McNider, and such claim should be disposed of first as a matter in probate, without joining other issues and questions, which may be properly adjudicated in the event the claimant prevails in the establishment of his claim against the estate.''

We also held that the order entered by the trial court was appealable, and said:

''It must be conceded that if the order appealed from is within the provisions of paragraph 4 of section 12823 of the

Code, it is an appealable order. That is, if it involves the merits or affects the final decision, it is appealable, regardless of whether the question could be preserved or reviewed upon appeal from the final judgment. We are satisfied that the questions involved and raised by the motions here under consideration do involve the merits and materially affect the final decision on the main question."

We think it apparent that the trial court was reversed because its order permitted the improper joinder of causes of action and of parties defendant. The opinion does not state explicitly why it holds that the motions under consideration involved the merits and materially affected the final decision on the main question. That the defendants, in the trial of the case on the merits of plaintiffs' claim, would have joined thereto actions involving other causes of action and other parties, would, under the facts and circumstances involved in this case, lead to such confusion and place them under such disadvantages, as would deprive them of the fair and impartial trial that the law contemplates. This, alone, would be sufficient basis for holding that the order appealed from involved the merits or affected the final decision.

The opinion in Ontjes v. McNider refers to Ellis v. Bruce, 215 Iowa 308, 245 N. W. 320, and the appellants in the instant case cite it in support of their contention, which we are now considering. In the Ellis case the trial court had overruled a motion to strike on account of a misjoinder, and from this ruling the defendants had appealed. The plaintiff filed a motion to dismiss the appeal in this court on the ground that the order complained of was not an appealable order. The plaintiff's motion to dismiss the appeal was based on the grounds that the order complained of was not prejudicial; that the procedure adopted by the defendants was insufficient; and that the order is not appealable within the terms of the statute. This court held that the order was prejudicial, that the procedure pursued by the defendants was sufficient and proper in form, and that appeals from orders refusing to separate causes of action improperly joined had been considered and passed upon so frequently in so many prior cases that the question would be considered as settled by precedent.

In the case of Manley v. Paysen, 215 Iowa 146, 244 N. W.

863, also relied on by appellants, the appeal was from an order refusing to one of two defendants a separate trial. From this order the defendant-movant appealed. The plaintiff filed a motion to dismiss in this court on the ground that the order was not appealable. In holding that the order was appealable, this court held that the appellant would not be able to have an impartial trial, if compelled to defend in the same trial along with the other defendants, because their interests were not only not the same, but were in many particulars directly antagonistic. It is quite apparent that an order placing the appellant in such a position necessarily involved the merits as far as the appellant was concerned.

In each of these cases relied upon by appellants, viz: Dorman v. Credit Reference & Reporting Company, Ontjes v. McNider, Manley v. Paysen and Ellis v. Bruce, the order was clearly one which would affect the appellants' rights in the presentation of their case, would place them at a disadvantage in the trial of the case upon the merits, and, because of such disadvantage, might result in a final judgment against the appellants which they would not have suffered but for the order appealed from. In each of these cases, therefore, the order appealed from did involve the merits and did affect the final decision.

In the instant case, however, the order from which the appeal is attempted has no reference whatever to any issues involved in the trial of the case upon its merits, and in no way affects the judgment or final decision that may be reached upon such trial. This order will not place the appellants at a disadvantage in the trial of the case, by depriving them of information which they should have in making their defense, and which they are unable to obtain because of an adverse ruling on a motion for more specific statement, as in Dorman v. Credit Reference & Reporting Company, and cases referred to therein. It will not compel the defendants to a trial upon the merits of the claim along with issues presented by other causes of action and parties improperly joined, as in Ontjes v. McNider and Ellis v. Bruce. It will not compel the defendants to meet issues upon the trial of the case upon its merits, which they should not be compelled to meet, and which should have been excluded under a motion to strike, as in some of the cases referred to in the Dorman case. It will not compel the defendants to go

to trial upon the issues involved in determining the merits of the case, along with other defendants whose interests are not only divergent but even antagonistic, as in Manley v. Paysen. The order here involved not only does not affect the issues upon which the case will be tried upon its merits, as such issues now stand, but it will not affect any other issues that might possibly develop hereafter, before or during the trial of the case on its merits. The only effect of the order from which the appeal is here attempted is to relieve the claimants from the bar of the statute, which required them to file their claim within twelve months from the day on which the executors gave notice of their appointment. The same statute which provides that the claim will be barred, unless filed within such twelve-month period, also provides that the bar will not apply if peculiar circumstances entitle the claimant to equitable relief. The only thing decided by the order here involved was that peculiar circumstances did exist and that such peculiar circumstances entitled the claimants to equitable relief from the bar of the statute. The claim itself stands as any other claim of the fourth class filed against an estate, after six months and within twelve months from the giving of notice by the executors of their appointment. The sole effect of the order is merely to allow the claim to be tried as any other claim of the fourth class filed within the twelve-month period. Such order does not involve the merits or materially affect the final decision.

Appellants devote a part of their argument to the proposition that, even if the order appealed from could be reviewed on appeal from a final judgment in favor of the appellees on the merits, this does not prevent it from being an appealable order involving the merits or affecting the final decision. The sole authority cited in support of this proposition is a statement from the opinion in Manley v. Paysen, 215 Iowa 146, 150, 244 N. W. 863, 865, wherein we said:

"It is doubtless true that the order of the trial court denying separate trials could be made subject to review on appeal from the final judgment. Under the statute, however, if the order be one that materially affects the 'final decision' it is rendered appealable as an intermediate order."

We held the order in the Manley case appealable, however, because, as we said, "We think that the nature and character

of the order appealed from is such as affects the final decision within the meaning of the statute.''

We deem it unnecessary at this time to consider or decide whether or not an intermediate order that involves the merits and affects the final decision, inheres in the final judgment and can be reviewed on an appeal from such final judgment, because, as we have already found, the order involved in the instant case does not affect the merits or affect the final decision. We are satisfied and now hold that any error in that order does inhere in any final judgment that may be entered in this case in favor of the appellees, and that it may be reviewed on appeal therefrom.

III. Appellees contend that, not only is the order involved in the instant case not a final order or judgment, as contemplated in section 12822, or an intermediate order involving the merits or affecting the final decision, as contemplated in subdivision 4 of section 12823, but that it is not appealable under the holding of this court in In re Receivership Bank of Hamburg, 203 Iowa 1399, 214 N. W. 561. In that case the court fixed the time within which claims against the receiver were required to be filed. The claimant filed his claim after the time fixed by the court for filing claims, and made an application to the court for permission to prove his claim and present his excuse for not filing it within the time fixed. The receiver resisted the application and a hearing was had. The trial court entered an order permitting the claimant to file and prove his claim upon its merits. This order explicitly stated that its sole purpose was to permit the filing and proving of the claim and that it did not pass upon the merits thereof. From this order the receiver appealed. Although the question was not raised by the claimant appellee, this court, on its own motion, held that an appeal would not lie, and dismissed the appeal. In so doing we said:

"The order permitting appellee to file and prosecute his claim did not prevent a judgment from which an appeal might be taken; neither did it involve the merits; nor would it materially affect the final decision, save as it would inhere in such judgment. The claimed equitable right of the appellee to file his claim after the expiration of the time fixed by the court for the filing of claims against the receiver would inhere

in any final judgment allowing the claim, and an erroneous finding in that respect would be available to appellant in an appeal therefrom. Eggert & Lockwood v. Interstate Inv. & Dev. Co., 146 Iowa 481, 125 N. W. 246; Goode v. Adams Exp. Co., 192 Iowa 1164, 186 N. W. 68; Central Nat. Bank v. Brand, 100 Wis. 648, 76 N. W. 608.''

The opinion does not discuss the question whether the order appealed from was a final order or judgment. Having considered the question of the appealability of the order on its own motion, it seems quite reasonable to assume that this court did not dismiss the appeal, on the ground that the order was not appealable, without considering the possibility of its being a final judgment or order. That this court did consider the question as to whether or not the order there involved was an appealable order, is affirmatively shown, we think, by the further statement in which we said:

''Had the appeal been by the claimant from an order denying him a right to file his claim, resulting in a denial of the claim without a hearing on the merits, a different question would be presented.''

Appellants seek to avoid the effect of the Bank of Hamburg case by contending that, as the time for filing claims was fixed by the court, the court, therefore, would have a discretion in extending such time. The opinion, however, does not base its holding, that the order was not appealable, on this ground. The opinion clearly shows that the court held the order to be not appealable, because it ''did not prevent a judgment from which an appeal might be taken; neither did it involve the merits; nor would it materially affect the final decision, save as it would inhere in such judgment.''

Appellants further contend that the Hamburg Bank case cannot now be considered as a precedent, because the decision in that case was prior to the decision in Dorman v. Credit Reference & Reporting Company, supra, which announced the rule that, an order overruling a motion to strike or dismiss if involving the merits is appealable as an intermediate order. They further contend that the appealability of the order in the instant case has been decided by this court in the later case of Lucas v. Ruden, 220 Iowa 494, 260 N. W. 60. We think it

proper to note that, although the Dorman case distinguished and criticized the holdings of this court in some of our prior cases, and directly overruled the holdings adopted in some of them, it neither criticized nor overruled the holding made by this court in the Bank of Hamburg case. The Bank of Hamburg case directly and explicitly held that the order appealed from therein did not involve the merits and did not affect the final decision, save as it would inhere in such judgment. It also held that the equitable right of the claimant to file his claim after the expiration of the time fixed by the court would inhere in any final judgment allowing the claim and could be reviewed on appeal from such judgment. We do not think that the decision in Lucas v. Ruden, supra, may be considered as overruling the Bank of Hamburg case, or as a precedent establishing the rule that, an order finding that peculiar circumstances exist entitling a claimant in a probate proceeding to a hearing on his claim is an appealable order. The writer of this opinion was also the writer of the opinion in the Lucas case. In the Lucas case, as in the instant case, an appeal was taken from an order of the trial court holding that the claimant had proved peculiar circumstances entitling him to equitable relief from the bar of the statute. The question of the appealability of the order was not raised or suggested in the record or in the briefs and arguments, and was not considered by this court. The only question considered was whether or not there was evidence of peculiar circumstances entitling the claimant to equitable relief. That the decision in the Lucas case cannot be considered as a precedent, establishing the appealability of the order in the case at bar, necessarily follows, we think, from the undisputed fact that the question as to the appealability of the order involved was not considered or determined in the Lucas case. In Baker v. American Railway Express Company, 207 Iowa 1350, 1351, 224 N. W. 513, 514, an appeal from an order setting aside a default was dismissed, and we said:

"This court has in some previous cases considered the merits of appeals from orders setting aside defaults. The attention of the court was not, in those cases, called to the question of nonappealability, and they are not to be taken as precedents for the consideration of the merits of an appeal from order setting aside default."

■■■ It appears to be suggested in appellants' argument that, because a trial of this case on its merits will require an unusually long trial and the expenditure of a large amount of money, which would be unnecessary, if this court should reverse the order of the trial court, this appeal, therefore, cannot be considered a dilatory proceeding. It may be conceded that, in the case now at bar, the attempted appeal from the order involved was not undertaken as a dilatory procedure, and that it will not unreasonably or unnecessarily delay the trial of the case upon its merits. The right of appeal, however, as we have already seen, is purely statutory, and, unless authorized by statute, no appeal can be taken to this court from a judgment or order of the trial court. Unless an appeal is thus authorized, this court is without jurisdiction to consider or determine the judgment or order appealed from, and must dismiss such appeal. The possibility of appeals being employed as dilatory tactics was very probably in the mind of the legislature, when it passed the statutes prescribing the judgments and orders from which appeals can be taken. If, however, an appeal is authorized by statute, this court cannot refuse to consider it, no matter how much expense or delay may result therefrom. Our single guide is the existence of jurisdiction to consider the appeal, and this is determined absolutely by the appealability of the order from which the appeal is taken. If the order involved in this case were appealable, then an appeal could be taken from such an order in every case involving a claim in probate against the estate of a decedent, where the claimant had failed to file his claim within the twelve-month period from the giving of notice by the executor, and no such claim could be finally adjudicated in the trial court until after such appeal had been tried and determined by this court. The question of whether an appeal would facilitate and expedite the trial of cases on their merits is, therefore, in no way determinative of the right to appeal.

We now hold that the order appealed from in the instant case was neither a final order or judgment nor an intermediate order involving the merits or materially affecting the final decision in this case. We further hold, therefore, that the order appealed from in this case was not an appealable order, but that it will inhere in any final judgment that may be entered in the trial of the claim upon its merits, and may be considered and

138

determined upon an appeal from such final judgment.—Appeal dismissed.

HAMILTON, C. J., and ANDERSON, KINTZINGER, PARSONS, RICHARDS, STIGER, and SAGER, JJ., concur.